JS 44 (Rev. 10 20)

# CIVIL COVER SHEET    DR-2:21-cv-00026

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.    *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Pedro Alberto Cabrales-Guajardo, Juan Manuel Torres-Dominguez, Eddy Francisco Serrano-Martinez, Cesar

**DEFENDANTS**

EUGENE LIGHT, BRANDON LAFFERE, L&L FARMS LLC, AND 2 L PRODUCE LLC

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Uvalde
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Javier Riojas, Texas RioGrande Legal Aid, 542 E. Main St., Eagle Pass, Texas 78852; tel: (830) 752-6409
Vianey Escudero, Texas RioGrande Legal Aid, 1331

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" In One Box Only)*

| | | | |
|---|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 | Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☐ 4 | Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" In One Box for Plaintiff*
*(For Diversity Cases Only)*    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" In One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☒ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 720 Labor Management Relations | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | ☐ 871 IRS—Third Party 26 USC 7609 | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" In One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
29 USC Section 201, et seq

Brief description of cause:
H2A workers assert employment related claims under the Fair Labor Standards Act and state law claims of fraud and breach of contract

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:

JURY DEMAND:   ☐ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____    DOCKET NUMBER _____

DATE   6/17/21

SIGNATURE OF ATTORNEY OF RECORD   *Javier Riojas*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## DEL RIO DIVISION

| | | |
|---|---|---|
| PEDRO ALBERTO CABRALES-GUAJARDO, JUAN MANUEL TORRES-DOMINGUEZ, EDDY FRANCISCO SERRANO-MARTINEZ, CESAR ZAMORA MUNIZ, and ALBERTO ZAMORA GALVAN,<br>Plaintiffs,<br><br>v.<br><br>EUGENE LIGHT, BRANDON LAFFERE, L&L FARMS LLC, AND 2 L PRODUCE LLC,<br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action  DR-2:21-cv-00026 |

## PLAINTIFF'S ORIGINAL COMPLAINT

## INTRODUCTION

1.    Plaintiffs are five Mexican citizens who worked in Texas under a foreign agricultural guestworker program known as "H-2A" for its statutory origin, 8 U.S.C. § 1101(a)(15)(H)(ii)(a). Defendants are individuals and businesses who disregarded the restrictions that federal immigration law places on access to H-2A workers, including wages, working conditions, work types, and work sites. Defendants regularly assigned Plaintiffs 12 hours of work each day, seven days a week, and paid Plaintiffs a daily wage of as little as $60 dollars. Defendants took advantage of Plaintiffs as part of a concerted effort to subvert federal restrictions on access to foreign labor. Plaintiffs see damages violations of the Fair Labor Standards Act ("FLSA"), breach of contract and fraud.

## JURISDICTION AND VENUE

2.    This court has jurisdiction over this action pursuant to:

a.  28 U.S.C. § 1331 (Federal Question);

1

      b.  28 U.S.C. § 1337 (Interstate Commerce);

      c.  28 U.S.C. § 1367(a) (Supplemental Jurisdiction); and

      d.  29 U.S.C. § 216(b) (FLSA).

3.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(a)(2).

## PARTIES

*Plaintiffs*

4.  Plaintiffs Pedro Alberto Cabrales-Guajardo, Juan Manuel Torres-Dominguez, Eddy Francisco Serrano-Martinez, Cesar Zamora Muniz and Alberto Galvan Zamora are five individuals who are citizens of Mexico and who are domiciled in the State of Coahuila, Mexico.

*Defendants*

5.  Defendant Eugene "Kincaid" Light is an individual who is domiciled in Texas and does business under the names "Rancho Quinque de Las Cruces," "AVK Ranch Company," "Light Bros. Pastoral Co., LLC," "L&L Farms LLC," and "1853 Land and Cattle Company." He may be served with process at 1205 Magnolia St., Uvalde, Texas 78801.

6.  Defendant Brandon Laffere is an individual who is domiciled in Texas and does business under the names "Laffere Farms LLC," "Laffere Heir Farms," "South Texas Beverage," "Encantada Cattle Company," "Leona Outfitters LLC," and "2L Produce, LLC." He may be served with process at 750 County Rd 1005, Batesville, Texas, 78829 or by certified mail return receipt requested at PO Box 287, Batesville, Texas 78829.

7.  L&L Farms, LLC is or was a Texas corporation whose registered agent is Brandon Laffere. It may be served with process by serving its registered agent, Brandon Laffere, at 1205 Magnolia St., Uvalde, Texas 78801.

2

8.      2 L Produce, LLC is or was a Texas corporation whose registered agent is Brandon

Laffere. It may be served with process by serving its registered agent, Brandon Laffere, at

750 County Rd 1005, Batesville, Texas 78829 or by certified mail return receipt

requested at PO Box 287, Batesville, Texas 78829.

## FOREIGN GUESTWORKER LAW

9.      Federal law prescribes when aliens may enter the United States to work, and what work

they may lawfully perform while they are here.

### *H-2A Agricultural Guestworker Program*

10.     The Immigration and Nationality Act ("INA") authorizes our nation's current agricultural

guestworker program, which is commonly known as "H-2A" due to the statute creating

the visa category used to implement this program.  See 8 U.S.C. § 1101(a)(15)(H)(ii)(a).

11.     Congress intends H-2A to accomplish two goals: (1) employ U.S. workers rather than

foreign workers whenever possible; and (2) prevent foreign workers from adversely

affecting the wages and working conditions of U.S. workers. 8 U.S.C. § 1188(a)(1)(A)-

(B).

12.     To accomplish these goals, Congress carefully limits H-2A to specific employers and

specific jobs.  Only after an employer identifies specific temporary jobs for which

insufficient U.S. workers are available does H-2A make visas available to nonimmigrant

alien workers who agree to perform those specific jobs at the time and place needed, and

for specific pay.  Id.

13.     Employers who seek H-2A workers must file two forms with the U.S. Department of

Labor ("DOL"): (a) DOL Form ETA-9142, an "Application for Temporary Employment

Certification;" and (b) DOL Form ETA-790, also known as a "clearance order."  20

C.F.R. §§ 655.121 and 655.130.  Forms ETA-9142 and ETA-790 set forth identical terms

of employment that the applicant employer intends to offer to U.S. and foreign workers.

See also 20 C.F.R. § 655.103 (defining "employer").

14.     To file an H-2A application (Form ETA-9142), each employer must sign a declaration

under "penalty of perjury" stating "that I have read and reviewed this application and that

to the best of my knowledge the information contained therein is true and accurate," and

any attempt "to aid, abet, or counsel" anyone in submitting any false information in this

application is a felony.  Id.

15.     DOL provides each clearance order (Form ETA-790) to state workforce agencies to

determine whether U.S. workers are available to fill the job and to ensure that the terms

of work being offered will not adversely affect the wages and working conditions of

similarly employed U.S. workers. Id.

16.     "H-2A labor contractors" are H-2A employers who supply workers to various fixed-site

businesses.  20 C.F.R. § 655.103.

17.     An H-2A application filed by an H-2A labor contractor "must be limited to a single area

of intended employment in which the fixed-site employer(s) to whom an [H-2A labor

contractor] is furnishing employees will be utilizing the employees." 20 C.F.R. §

655.132(a).

18.     H-2A labor contractors must comply with all requirements applicable to H-2A

employers, and must also submit to DOL: (a) a detailed itinerary of all fixed-site

worksites where the H-2A workers will labor; and (b) "fully-executed work contracts

with each fixed-site employer" listed on the itinerary. 20 C.F.R. § 655.132(b).

19.   Each clearance order states the wages, terms of employment, type of work, site of work, housing, transportation, workers' compensation coverage, and other job conditions that the employer agrees to provide each H-2A worker.  20 C.F.R. § 655.122.

20.   H-2A clearance orders must include written assurance that employers will comply with federal law, including the FLSA, 29 U.S.C. § 201 et seq. See 20 C.F.R. § 655.135(e).

21.   H-2A employers must pay a wage that is the highest of: "the adverse effect wage rate" ("AEWR") in effect at the time the work is performed; the prevailing hourly wage or piece rate; or the Federal or State minimum wage. 20 C.F.R. §§ 655.103(b), 655.120(a), and 655.122(l).

22.   DOL published the following AEWR rates for agricultural work performed in Texas:

| Calendar Year | Hourly Rate |
|---|---|
| 2014 | $10.86 |
| 2015 | $10.35 |
| 2016 | $11.15 |
| 2017 | $11.59 |
| 2018 | $11.87 |
| 2019 | $12.23 |
| 2020 | $12.67 |
| 2021 | $13.03 |

See 20 C.F.R. § 655.120(c).

23.   The federal "minimum wage" is $7.25 per hour. The federal "overtime" wage is one and a half times the regular rate of pay for all hours in excess of 40 per workweek. 29 U.S.C. §§ 206(a)(1) and 207; 20 C.F.R. § 655.135(e).

24.   H-2A employers are prohibited from requiring H-2A workers to pay kickbacks, recruiting fees, and other costs related to obtaining H-2A visas. 8 C.F.R. § 214.2(h)(5)(xi)(A), 20 C.F.R. §§ 655.122(p)(2) and 655.135(j), and 29 C.F.R. § 531.35.

25.     H-2A clearance orders and H-2A regulations state the terms of the contract between each
        H-2A employer and worker. 20 C.F.R. § 655.122(q).

26.     If DOL agrees that insufficient U.S. workers are available to fill the job described in the
        application and clearance order, and the employment terms stated in these documents are
        sufficient to avoid an adverse effect on U.S. workers, DOL certifies this fact to U.S.
        Citizenship and Immigration Services ("USCIS") for final approval of H-2A visas. 8
        C.F.R. § 214.2(h)(2)(i).

27.     DOL Labor Certifications—Forms ETA-9142 and ETA-790—are widely published.  See
        https://lcr-pjr.doleta.gov/index.cfm?event=ehLCJRExternal.dspAdvJobOrderSearch#pager.

28.     H-2A visas only allow a foreign worker to work in the United States pursuant to the specific
        clearance order for which the visa was issued, and the type of work allowed under the visa
        cannot be changed in a way that permits employers to unilaterally convert one type of visa
        into another.  8 U.S.C. § 1188; 8 C.F.R. 214.2(h)(5)(viii)(C).

29.     Employers may decide which foreign workers are provided H-2A visas for their clearance
        orders, and cancel their workers' H-2A visas at any time.  20 C.F.R. § 655.135(i)(1).

### *H-2B Non-Agricultural Guestworker Program*

30.     H-2A visas are only available for agricultural work, as defined in 8 U.S.C. §
        1101(a)(15)(H)(ii)(a) and 20 C.F.R. § 655.103(c).  Employers are not allowed to assign
        nonagricultural work to H-2A workers.

31.     Employers may assign non-agricultural work to foreign workers only under the H-2B
        program, which Congress created with the same objectives as H-2A using procedures that are
        similar to H-2A.  See 8 U.S.C. §§ 1101(a)(15)(H)(ii)(b), 1188(a)(1)(A)-(B).

32.    Federal law requires H-2B workers to be paid a prevailing wage for the specific job and

locale where the work is performed.  The prevailing wage for H-2B jobs is usually higher

than the AEWR used under H-2A.   See 20 C.F.R. §§ 655.10(a), 655.20, 655.51.

33.    Prevailing wages for the following relevant jobs in Texas were:

| Dates | *Mobile Heavy Equipment Mechanics* Mean Hourly Rate | *Maintenance Workers, Machinery* Mean Hourly Rate |
|---|---|---|
| 7/2015-6/2016 | $20.52 | $23.31 |
| 7/2016-6/2017 | $21.73 | $21.52 |
| 7/2017-6/2018 | $22.89 | $22.08 |

34.    Federal law requires employers to verify that all employees are lawfully present in the United

States and permitted to be "so employed" in the manner that the employer chooses to employ

them.  8 U.S.C. §§ 1324a(a) and 1324a(h)(3).

## STATEMENT OF FACTS

35.    Defendants filed two applications for fifty H-2A workers in 2018. Plaintiffs suffered

damages under the two applications, which are attached as Exhibits A and B and

incorporated pursuant to Rule 10(c).

### *Clearance Order TX-86246895 for Work from June 20, 2018 until April 20, 2019*

36.    Defendants, Brandon Laffere and 2 L Produce LLC, filed Clearance Order TX-86246895

("Exhibit A"), which sought twenty H-2A workers to plant and harvest crops and grain[1] in

the area of Batesville in South Texas between June 20, 2018 and April 20, 2019.

37.    Exhibit A sets forth material employment terms, including pay at $11.87 per hour in Texas

for forty-five hours per week. Defendant, Brandon Laffere signed the Clearance Order,

acknowledging that it contained all terms and conditions of employment.

---

[1] Crops and grain included squash, cabbage, spinach and corn.

38.    DOL certified that insufficient U.S. workers were available to perform the work described in Exhibit A, and USCIS made H-2A visas available to secure the labor described in it.

39.    Defendants, Brandon Laffere and 2 L Produce LLC, then offered employment to Plaintiff Pedro Alberto Cabrales-Guajardo and 19 other Mexican workers, the workers all accepted this employment, and the Defendants made H-2A visas available that permitted all 20 workers to enter the United States solely to perform the work described in Exhibit A.

40.    As a matter of law, the contract terms applicable to Plaintiff's employment between June 20, 2018 and April 20, 2019, are set forth by Exhibit A and the regulations governing H-2A and H-2B employment, which incorporate the FLSA's minimum wage and/or overtime requirements. 20 C.F.R. §§ 655.122(q) and 655.135(e).

41.    Pedro Alberto Cabrales-Guajardo was recruited by Epigmenio Rodriguez. Cabrales-Guajardo paid Epigmenio $500 as a recruitment fee. During the process of getting his visa, Cabrales-Guajardo had to travel to Monterrey, Mexico and Laredo, Texas. Cabrales-Guajardo spent around $120 dollars on these trips in travel and subsistence expenses. Cabrales-Guajardo was never reimbursed for these expenses incurred for the benefit of Defendants.

42.    While employed by Defendants under this contract, Pedro Alberto Cabrales-Guajardo was assigned to work 12-hour days, seven days a week for his first two weeks of work. Pedro Alberto Cabrales-Guajardo was only compensated $100 dollars daily during these two weeks. Cabrales-Guajardo was not paid the AEWR wage for the work assigned to him. The hourly rate under Exhibit A was $11.87 per hour. Further, Plaintiffs wages for the first week of employment were less than the FLSA minimum wage as a result of Defendant's failure to reimburse Plaintiff for the recruitment and visa fees and the cost of his inbound transportation.

43.   After Pedro Alberto Cabrales-Guajardo began getting paid by the hour, he was constantly sent back to Mexico for lack of work or given few hours to work. Each trip cost Cabrales-Guajardo around $50 dollars. Workers would get called when there was work available. However, after the end of September Cabrales-Guajardo was sent home and was not called back. Cabrales-Guajardo reached out to the Foreman and was informed there would be no more work and Cabrales-Guajardo was unable to return to work for Defendants after September 20, 2018.

44.   Defendants breached their Exhibit A-based contract with Pedro Alberto Cabrales-Guajardo by:

   a. assigning him to work more than 40 hours a week without just compensation;

   b. failing to comply with the FLSA's minimum-wage requirement during the first week of work and for all unpaid hours worked;

   c. failing to maintain and provide earnings statements as required by 20 C.F.R. § 655.122(j);

   d. housing Cabrales-Guajardo under conditions that did not meet federal housing standards, including a house infested with bugs that would sometimes bite or sting the workers and which had only one bathroom for all the workers;

   e. failing to reimburse him for his full transportation and subsistence costs from the point of recruitment in Mexico to the place of work; and

   f. failing to pay him for his full transportation and subsistence costs from his place of work to his home in Mexico after Plaintiff's services were no longer needed; and

   g. failing to provide employment for at least three-fourths of the workdays of the total contract period set out in Exhibit A as required by 20 C.F.R. § 655.122(i).

9

45.     Juan Manuel Torres-Dominguez was also recruited by Epigmenio Rodriguez. Torres-Dominguez paid Epigmenio a $500 recruitment fee and during the process of getting his visa he incurred expenses of $680 dollars to travel to Monterrey, Mexico and Laredo, Texas.

46.     While employed by Defendant under this contract, Juan Manuel Torres-Dominguez was assigned to work 12-hour days, seven days a week for the first two weeks he worked for Defendants. Juan Manuel Torres-Dominguez was only compensated $100 dollars daily during these two weeks. Torres-Dominguez was not paid the AEWR wage for the work assigned to him. The hourly rate under Exhibit A was $11.87 per hour. Further, Plaintiffs wages for the first week of employment were less than the FLSA minimum wage as a result of Defendant's failure to reimburse Plaintiff for the recruitment and visa fees and the cost of his inbound transportation.

47.     Juan Manuel Torres-Dominguez continued to work 12-hour days, seven days a week. At times he was assigned up to 15 hour days. Juan Manuel Torres-Dominguez was not properly compensated under the minimum wage laws of the FLSA.

48.     Torres-Dominguez was amongst the employees that were sent back to Mexico and had to wait to be called back if there was work available. Torres-Dominguez traveled back and forth four times and incurred expenses of about $40 dollars per trip. He was never compensated for these expenses that were incurred for the benefit of Defendants.

49.     Torres-Dominguez was not called back to work after he refused to accept getting paid $70 dollars a day. After being notified that his pay would decrease to $70 dollars per day, Torres-Dominguez complained to the foreman. The foreman responded to Torres-Dominguez by stating that if Torres-Dominguez did not like it he should leave.

50.    Defendants breached their Exhibit A-based contract with Juan Manuel Torres-Dominguez by:

    a. assigning him to work more than 40 hours a week without just compensation;

    b. failing to comply with the FLSA's minimum-wage requirement during the first week of work and for all unpaid hours worked;

    c. failing to maintain and provide earnings statements as required by 20 C.F.R. § 655.122(j);

    d. housing Torres-Dominguez under conditions that did not meet federal housing standards, including a house infested with bugs that would sometimes bite or sting the workers and which had only one bathroom for all the workers;

    e. failing to reimburse him for his full transportation and subsistence costs from the point of recruitment in Mexico to the place of work; and

    f. failing to pay him for his full transportation and subsistence costs from his place of work to his home in Mexico after Plaintiff's services were no longer needed; and

    g. failing to provide employment for at least three-fourths of the workdays of the total contract period set out in Exhibit A as required by 20 C.F.R. § 655.122(i).

51.    Cesar Alberto Zamora Muniz was also recruited by Epigmenio Rodriguez and paid a recruitment fee of $600 dollars. During his process of obtaining the H2A visa, Zamora Muniz incurred around $400 dollars in traveling expenses to Laredo, Texas and paying the consulate.

52.    While employed by Defendants under this contract, Cesar Alberto Zamora Muniz was assigned to work 12-hour days, seven days a week for the first three weeks he worked for Defendants. Cesar Alberto Zamora Muniz was only compensated around $400 dollars during

this three week period. Zamora Muniz was not paid the AWER wage for the work assigned to him.  The hourly rate under Exhibit A was $11.87 per hour. Further, Plaintiffs wages for the first week of employment were less than the FLSA minimum wage as a result of Defendant's failure to reimburse Plaintiff for the recruitment and visa fees and the cost of his inbound transportation.

53.    During his continued employment, Cesar Alberto Zamora Muniz continued working 12-hour days, seven days a week for the following three weeks. Zamora Muniz was paid $120 daily during this period. Again, Zamora Muniz was not paid the AWER wage for the work assigned to him.

54.    Additionally, Zamora Muniz incurred around $400 dollars in expenses traveling back and forth between his home in Mexico and the Defendant's ranch. Zamora Muniz was not compensated for these expenses incurred by him for the benefit of Defendants.

55.    Defendants breached their Exhibit A-based contract with Cesar Alberto Zamora Muniz by:

   a. assigning him to work more than 40 hours a week without just compensation;

   b. failing to comply with the FLSA's minimum-wage requirement during the first week of work and for all unpaid hours worked;

   c. failing to maintain and provide earnings statements as required by 20 C.F.R. § 655.122(j);

   d. housing Zamora Muniz under conditions that did not meet federal housing standards, including a house infested with bugs that would sometimes bite or sting the workers and which had only one bathroom for all the workers;

   e. failing to reimburse him for his full transportation and subsistence costs from the point of recruitment in Mexico to the place of work; and

      f. failing to pay him for his full transportation and subsistence costs from his place of

         work to his home in Mexico after Plaintiff's services were no longer needed; and

      g. failing to provide employment for at least three-fourths of the workdays of the total

         contract period set out in Exhibit A as required by 20 C.F.R. § 655.122(i).

56.    Eddy Francisco Serrano-Martinez was also recruited by Epigmenio Rodriguez. During the

      process of obtaining his visa, Serrano-Martinez incurred around $520 dollars in traveling

      expenses.

57.    Notwithstanding the terms and conditions of the Clearance Order, Eddy Francisco Serrano-

      Martinez was assigned directly or indirectly by Defendants to work as a non-agricultural

      employee. Serrano-Martinez traveled between work sites, repairing fences used for cattle and

      livestock in ranches in South Texas.

58.    While employed by Defendant under this contract, Eddy Francisco Serrano-Martinez worked

      between 8 – 11 hours a day. Serrano-Martinez was not paid the prevailing wage for the work

      assigned to him.  The hourly rate under Exhibit A was $11.87 per hour. Serrano-Martinez

      was not properly compensated under the minimum  wage and overtime laws of the FLSA.

59.    Additionally, Serrano-Martinez was never paid his last paycheck. Serrano-Martinez had

      worked 10 hours daily, for 2 or 3 days before he was sent back to Mexico for lack of work.

      Serrano-Martinez traveled to Uvalde to get his paycheck but Defendant refused to pay him.

60.    Defendants breached their Exhibit A-based contract with Eddy Francisco Serrano-Martinez

      by:

      a. assigning him to perform work other than planting and harvesting crops;

      b. failing to comply with the FLSA's overtime requirement;

c. failing to comply with the FLSA's minimum-wage requirement during the first week of work and for all unpaid hours worked;

d. failing to maintain and provide earnings statements as required by 20 C.F.R. § 655.122(j);

e. housing Serrano-Martinez under conditions that did not meet federal housing standards, including a house infested with bugs that would sometimes bite or sting the workers and where the water would smell like sulfur at times;

f. failing to reimburse him for his full transportation and subsistence costs from the point of recruitment in Mexico to the place of work; and

g. failing to pay him for his full transportation and subsistence costs from his place of work to his home in Mexico after Plaintiff's services were no longer needed;

h. failing to provide employment for at least three-fourths of the workdays of the total contract period set out in Exhibit A as required by 20 C.F.R. § 655.122(i).

*Clearance Order TX-3615200 for Work from October 15, 2018 until August 14, 2019*

61.   Defendants, Eugene Light and L&L Farms, filed Clearance Order TX-3615200 ("Exhibit B"), which sought thirty H-2A workers to harvest crops and operate tractors and self-propelled machinery to plow in the Batesville area in South Texas between October 15, 2018 and August 14, 2019.

62.   Exhibit B sets forth material employment terms, including pay at $11.87 per hour in Texas for forty hours per week. Defendant, Eugene Light signed the Clearance Order, acknowledging that it contained all terms and conditions of employment.

63.   DOL certified that insufficient U.S. workers were available to perform the work described in Exhibit B, and USCIS made H-2A visas available to secure the labor described in it.

64.   Defendants then offered employment to Plaintiff Alberto Zamora-Galvan and 29 other
      Mexican workers, the workers all accepted this employment, and the Defendants made H-2A
      visas available that permitted all 30 workers to enter the United States solely to perform the
      work described in Exhibit B.

65.   As a matter of law, the contract terms applicable to Plaintiff's employment between October
      15, 2018 and August 14, 2019, are set forth by Exhibit B and the regulations governing H-2A
      and H-2B employment, which incorporate the FLSA's minimum wage requirement. 20
      C.F.R. §§ 655.122(q) and 655.135(e).

66.   While employed by Defendant under this contract, Alberto Zamora-Galvan was regularly
      assigned to work 12-hour days, seven days a week. At times he was assigned to work up to
      15-hour days. He was not given time to rest and was not able to see his family from January
      to May of 2019.

67.   Alberto Zamora-Galvan was only compensated for eight hours of work each day, even if he
      worked more. Additionally, Zamora-Galvan was compensated for only 5 or 6 days of work
      although he worked from Monday to Sunday.

68.   Alberto Zamora-Galvan was not properly compensated under the minimum wage laws of the
      FLSA.

69.   Alberto Zamora-Galvan was not paid the prevailing wage for the work assigned to him. The
      AWER under Exhibit B was $11.87 per hour, but the prevailing wage for the type of work he
      was assigned was over $20 per hour.

70.   Defendants breached their Exhibit B-based contract with Alberto Zamora-Galvan by:

              a. assigning him to work more than 40 hours a week without just compensation;

b. requiring him to perform work almost every day, with only a couple of days off from November 2018 to May 2019;

c. **failing to comply with the FLSA's minimum-wage requirements;**

d. failing to maintain and provide earnings statements as required by 20 C.F.R. § 655.122(j); and

e. failing to reimburse him for his full transportation and subsistence costs from the point of recruitment in Mexico to the place of work and back to Mexico after his services where no longer needed.

## CAUSES OF ACTION

71.    To support each of the following causes of action, Plaintiffs incorporate by reference all the forgoing allegations.

### I.    Fair Labor Standards Act

72.    Defendants, Brandon Laffere and 2L Produce, employed Pedro Alberto Cabrales-Guajardo, Juan Manuel Torres-Dominguez, Eddy Francisco Serrano-Martinez, and Cesar Zamora Muniz during the periods specified on Exhibit A. Defendants, Eugene Light and L&L Farms, employed Alberto Galvan Zamora for the periods specified on Exhibit B.

73.    During the periods of work specified in Exhibits A and B, Plaintiffs performed work that is covered by the FLSA.

74.    Defendants, Brandon Laffere and 2L Produce, willfully failed to pay Plaintiffs, Pedro Alberto Cabrales-Guajardo, Juan Manuel Torres-Dominguez, and Cesar Zamora Muniz at least the minimum wages as required by the FLSA. Defendants, Brandon Laffere and 2L Produce, willfully failed to pay Plaintiff, Eddy Francisco Serrano-Martinez, at least the minimum wage and overtime wages as required by the FLSA. Circumstances showing

16

willfulness include: (a) the obviousness of the violations, (b) the longstanding and repeated nature of the violations, (c) the failure of Defendants to keep adequate payroll records, (d) failure to maintain and timely disclose adequate payroll and contract information to Plaintiffs, (e) failure to display any poster or other document describing FLSA rights in Spanish in any place where any Plaintiff could see it, and (f) failure to access widely available information about employers' FLSA responsibilities.

75.     Defendants, Eugene Light and L&L Farms, willfully failed to pay Alberto Galvan Zamora at least the minimum wages as required by the FLSA. Circumstances showing willfulness include: (a) the obviousness of the violations, (b) the longstanding and repeated nature of the violations, (c) the failure of Defendants to keep adequate payroll records, (d) failure to maintain and timely disclose adequate payroll and contract information to Plaintiffs, (e) failure to display any poster or other document describing FLSA rights in Spanish in any place where any Plaintiff could see it, and (f) failure to access widely available information about employers' FLSA responsibilities.

76.     To redress these violations Plaintiffs are entitled to relief as stated in 29 U.S.C. § 216(b).

## II.     Breach of Contract

77.     Exhibits A and B, as supplemented by federal H-2A law, constitute employment contracts formed between Plaintiffs and Defendants.

78.     Plaintiffs performed these contracts as directed by Defendants.

79.     Defendants, Brandon Laffere and 2L Produce, breached the contracts with Pedro Alberto Cabrales-Guajardo, Juan Manuel Torres-Dominguez, Eddy Francisco Serrano-Martinez, and Cesar Zamora Muniz. Defendants, Eugene Light and L&L Farms, breached the contract with Alberto Galvan Zamora.

80.     Plaintiffs are entitled to recover their damages for these breaches pursuant to state common law and the Texas Civil Practice and Remedies Code.

### III.     Quantum Meruit

81.     Plaintiffs provided valuable services to Defendants.

82.     Defendants accepted Plaintiffs' services.

83.     Defendants had reasonable notice that Plaintiffs expected compensation for their services.

84.     Plaintiffs should recover from Defendants the reasonable value of their services in *quantum meruit* to the extent that this recovery is unavailable for breach of contract.

### IV.     Fraud

85.     Defendants made representations in the H2A applications and the corresponding clearance orders, Exhibits A and B, regarding terms and conditions of employment. These representations were material to Plaintiffs.

86.     Defendants' representations regarding the terms and conditions of employment were false.

87.      Plaintiffs relied on Defendants' representations.

88.     Plaintiffs' reliance on Defendants' representations caused Plaintiffs injury.

### PRAYER

WHEREFORE, Plaintiffs pray that this Court:

a.   Award damages for unpaid minimum wages and overtime wages, and an equal amount in liquidated damages pursuant to the FLSA;

b.   Award Plaintiffs their actual, incidental, and consequential damages resulting from Defendants' breach of their respective contracts;

c.   Award Plaintiffs their actual damages, mental anguish damages, and exemplary damages for fraud;

d. Award Plaintiffs damages in quantum meruit equal to the reasonable value of the services provided to Defendants;

e. Award Plaintiffs reasonable attorneys' fees and court costs;

f. pre-judgment and post-judgment interest; and

g. such other relief as this Court deems just and proper.


Respectfully submitted,

TEXAS RIOGRANDE LEGAL AID


BY:_____
Javier Riojas
SBN: 16935830
Email:jriojas@trla.org
Texas RioGrande Legal Aid
542 East Main Street
Eagle Pass, TX 78853
Tel  830-752-6400
Fax 830-773-5806


By: /s/Vianey Arianna Escudero
Vianey Arianna Escudero
State Bar No. 24109065
vescudero@trla.org
Texas RioGrande Legal Aid
1331 Texas Ave.
El Paso, Texas 79901
Tel. & Fax (830) 774-8301